[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15915
Non-Argument Calendar

_____

D.C. Docket No. 3:11-cr-00138-TJC-JRK-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESUS TIJERINA GARZA,
a.k.a. Guero,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 4, 2013)

Before MARCUS, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Jesus Tijerina Garza appeals his sentence of 480 months of imprisonment,

following his plea of guilty to conspiring to distribute five or more kilograms of

cocaine. See 21 U.S.C. § 846. Garza challenges the enhancement of his sentence for his role as a manager or supervisor of the conspiracy. See United States Sentencing Guidelines Manual § 3B1.1(b) (Nov. 2011). We affirm.

A defendant is subject to a three-level enhancement of his base offense level if he "was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive . . . ." Id. Garza does not dispute that the drug conspiracy involved five or more participants, so we address only whether Garza served in a managerial role. To determine the nature of a defendant's role, we consider "the exercise of decision making authority, the nature of participation in the commission of the offense, . . . the claimed right to a larger share of the [proceeds], the degree of participation in planning or organizing the offense, . . . and the degree of control and authority exercised over others." Id. cmt. n.4. The three-level enhancement applies if the defendant was "the organizer, leader, manager, or supervisor of one or more other participants." Id. cmt. n.2.

The district court did not clearly err by enhancing Garza's sentence. Garza controlled several members of the conspiracy by providing cocaine for them to distribute and by requiring them to return the proceeds of sales to him. See United States v. Matthews, 168 F.3d 1234, 1249–50 (11th Cir. 1999); United States v. Howard, 923 F.2d 1500, 1502–03 (11th Cir. 1991). Distributor Jose Solorio testified that Garza dictated the price charged for each kilogram of cocaine and

how much cocaine he would supply, and both Solorio and distributor Salomon

Robles testified that Garza decided where to transfer the cocaine.  Distributors

Solorio, Agustin Santos-Garcia, and Huber Dominguez-Diaz testified that they

withheld a small profit before transferring the rest of the drug proceeds to Garza

and that they had to pay Garza for the cocaine even if it could not be sold.  Garza

also managed and owned assets of the drug conspiracy.  See United States v.

Glover, 179 F.3d 1300, 1303 n.5 (11th Cir. 1999) (explaining that the managerial

role involves "both management of people and . . . things").  Agent Florentino

Rosales of the Drug Enforcement Agency described a ledger in which Garza

recorded the amounts of cocaine received, debts incurred, and payments made by

three of his distributors, and Agent Douglas Allen Griffith testified that Garza

purchased with cash a home that he used to store and repackage cocaine and that

he transported the cocaine in a compartment he had added to a red Ford Explorer

vehicle.

Garza argues that he acted at the behest of his drug supplier, Domingo

Rodriguez-Mederos, but the district court was entitled to reach a contrary finding.

Distributors Robles and Leticia Santos-Garcia testified about circumventing

Rodriguez-Mederos and buying cocaine directly from Garza, who operated the

drug conspiracy even after Rodriguez-Mederos was deported to Mexico.  But even

if Garza was subordinate to Rodriguez-Mederos, that fact "does not absolve

3

[Garza] of the supervisory role he played in coordinating and managing" the drug

conspiracy.  See United States v. Jones, 933 F.2d 1541, 1547 (11th Cir. 1991).

We **AFFIRM** Garza's sentence.